1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10

11  MILES PASCHINI,                          Case No.:  19cv33-L (NLS)

12                            Plaintiff,      **ORDER ON JOINT MOTION FOR**
                                              **DETERMINATION OF DISCOVERY**
13  v.                                        **DISPUTE NO. 2**

14  WAVECREST PAYMENT SERVICES                **[ECF No. 55]**
    OF THE AMERICAS, Inc.; and DOES 1
15  through 20, inclusive,

16                            Defendants.

17

18        Before the Court is the parties' Joint Motion for Determination of Discovery

19  Dispute No. 2, wherein Plaintiff Miles Paschini ("Plaintiff") asks the Court to compel

20  Defendant WaveCrest Payment Services of the Americas, Inc. ("WaveCrest") to further

21  respond to certain interrogatories and requests for production.  ECF No. 55.  Upon

22  consideration and for the reasons stated below, the Court **GRANTS IN PART** and

23  **DENIES IN PART** the motion to compel.

24  I.    **BACKGROUND**

25        In his complaint, Plaintiff alleges that he was employed as WaveCrest's Chief

26  Revenue Officer from 2015 to 2017.  ECF No. 1-1 at ¶ 6.  Based on his employment

27  contracts, Plaintiff alleges that he was due certain commissions and bonuses that would

28

be calculated from WaveCrest's actual gross profit and a bonus structure based on achievement of certain objectives and deliverables. *Id.*

On January 12, 2018, prior to WaveCrest paying Plaintiff any of the commissions and bonuses, Plaintiff alleges that he was terminated without cause. *Id.* at ¶ 7. Plaintiff alleges that WaveCrest then adjusted its actual gross profit down by over a million dollars, specifically by including a "Provision of Legal Fees" in the amount of $540,000 and a "Provision for Restructuring" in the amount of $708,000. *Id.* at ¶ 8. Plaintiff alleges that WaveCrest made this adjustment to eliminate any commissions and bonuses that would have been due him, and that WaveCrest has not paid him any to date. *Id.*

The present motion relates to discovery requests propounded in Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents. *See* ECF No. 55-3. Plaintiff propounded these requests on July 3, 2019 and WaveCrest responded on August 12, 2019. ECF No. 55-2 at ¶¶ 2-4. However, Plaintiff states that WaveCrest objected broadly to the requests and did not produce any documents. *Id.* at ¶ 5. Plaintiff then filed a Motion for Determination of Discovery Dispute No. 1 with the Court. ECF No. 36. Due to a substitution of counsel for WaveCrest, the Court ordered the parties to meet and confer with new counsel and gave the parties several extensions thereafter to resolve the issues. *See* ECF Nos. 39, 44-48. Finally, the Court granted Plaintiff's motion to compel. ECF No. 49. The Court ordered WaveCrest to provide supplemental responses to the discovery and produce documents by February 7, 2020 and gave the parties a deadline to file any substantive dispute as to the discovery if any remained at issue. *Id.* at 2-3. Plaintiff now brings this motion to address the substantive issues that remain for a number of specific interrogatories and requests for production.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance

2

of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible to be discoverable.  *Id.*  Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'"  *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted).  The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case."  *Id.*  Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery."  *Id.*

The Court has broad discretion in determining relevancy for discovery purposes.  *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted).  To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request.  Fed. R. Civ. P. 26(b)(2).  Limits should also be imposed where the burden or expense outweighs the likely benefits.  *Id.*  How and when to so limit discovery, or to "issue an

order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion.  Fed. R. Civ. P. 26(c)(1).

## III.   DISCUSSION

### a.  Interrogatory No. 12

Interrogatory No. 11 seeks the following information:

Does WaveCrest contend that Paschini was not due any or all of his "Management Based Objectives 'MBO' Achievement Payout" for 2017, as defined in section 4.2( c) of the Second Amendment to Employment Agreement dated January 1, 2017?

Interrogatory No. 12 then requests:

If your answer to the preceding interrogatory was in the affirmative, state all facts that support your response.

For this request, WaveCrest has agreed to supplement its response and stated that it will provide further details regarding the reasons Plaintiff did not earn an MBO bonus for 2017.  ECF No. 55 at 11.  Accordingly, the motion to compel on this interrogatory is **DENIED AS MOOT**.

### b.  Interrogatories 18 & 19

These interrogatories seek the following information:

**No. 18**:  Please describe how WaveCrest arrived at the amount of $540,000, set forth in the "Credit Note," in connection with the line item of "2017 GP adjustments - Provision for Legal Fees."

**No. 19**: Please describe how WaveCrest arrived at the amount of $708,000, set forth in the "Credit Note," in connection with the line item of "2017 GP adjustments - Provision for Restructuring."

The parties do not dispute the relevance of the information sought in these requests.  Rather, Plaintiff argues that WaveCrest's response—namely that "[t]his adjustment was made at the direction of the Company's third-party auditor, Ernst & Young, at the time this Credit Note was prepared.  Defendant has not yet received audited financial statements from Ernst & Young that may shed further light on this issue"—is

4

not sufficient.  ECF No. 55 at 3-4.  WaveCrest responds that the company ceased operating in the United States and Gibraltar, where personnel and financial records were stored, and getting information has been difficult because relevant personnel are no longer employed and there is no staff to review files.  *Id.* at 11.  WaveCrest argues that it has produced many documents that show why the adjustments to gross profit was made and it has requested the final audited financial statements but has not yet received them. *Id.* at 11-12.

        While cognizant of the practical challenges WaveCrest may face, this case has been pending, and in particular these discovery requests, for over 8 months at this time. The audit report, in particular, has been at issue for over a year, since the Early Neutral Evaluation Conference was held in February 2019.  After that conference, the Court ordered WaveCrest to produce the audited financial statements from Ernst and Young by March 28, 2019.  ECF No. 12.  The Court subsequently granted several extensions to WaveCrest to produce the audited financial statements because they were not ready.  *See* ECF No. 22 (granting extension until May 10, 2019); ECF No. 24 (granting extension up to August 8, 2019).  On August 8, 2019, shortly before the deadline, WaveCrest submitted a statement stating that the audit was still not ready and would be produced when it was ready.  Now, 8 months after this last status report, WaveCrest does not provide any explanation of why it still does not yet have the audit from Ernst and Young and why it has taken such a long time to obtain.  If WaveCrest is claiming these adjustments based on what Ernst and Young calculated during the audit, then it needs to provide this information to Plaintiff so he can prosecute his case effectively as this information goes to the heart of the dispute.  This case is no longer at an early stage—all discovery has closed, substantive motions have been filed, and a pretrial conference is set in just two months.

        Accordingly, the Court **GRANTS** the motion to compel as to these interrogatories. WaveCrest must provide a substantive explanation for how these numbers were calculated and cannot simply state that it was based on the audit results.

### c.  Requests for Production Nos. 6, 19-22, 23-26

These requests for production seek the following documents:

**No. 6**:  WaveCrest's Financial Statements from 2015 to the present.

**No. 19**: Any and all documents relating to WaveCrest's "Credit Note," attached hereto as Exhibit A, and specifically documents relating to WaveCrest's "2017 GP adjustments - Provision for Legal Fees" in the amount of $540,000.

**No. 20**:  Any and all documents relating to WaveCrest's "Credit Note," attached hereto as Exhibit A, and specifically documents relating to WaveCrest's "2017 GP adjustments - Provision for Restructuring" in the amount of $708,000.

**No. 21**:  Documents reflecting any incurred costs associated with WaveCrest's "Provision for Restructuring," as set forth in WaveCrest's "Credit Note" attached hereto as Exhibit A.

**No. 22**:  Documents reflecting any incurred legal fees associated with WaveCrest's "Provision for Provision for Legal Fees," as set forth in WaveCrest's "Credit Note" attached hereto as Exhibit A.

**No. 23**:  Documents reflecting WaveCrest's actual gross profits for 2018.

**No. 24**:  Documents reflecting WaveCrest's adjusted gross profits for 2018.

**No. 25**:  Documents reflecting WaveCrest's actual gross profits for 2017.

**No. 26**:  Documents reflecting WaveCrest's adjusted gross profits for 2017.

Like interrogatories 18 and 19 above, these requests for production target financial information from WaveCrest.  Plaintiff argues that requests 19-22 go directly to the issue of whether the adjustments made to WaveCrest's gross profit for legal costs and restructuring are supported.  ECF No. 55 at 6-7.  Requests 6, 23-26 relate to WaveCrest's gross profits, which are used to calculate Plaintiff's bonuses and commissions.  *Id.* at 4-5, 7-8.  The Court agrees that these are relevant to the case.

WaveCrest objects on the same grounds as above.  First, that it has ceased operations in the United States and Gibraltar where its financial records are located.  ECF No. 55 at 14.  Second, that it has produced documents including contracts with business

partners that formed the basis of litigation against the company, resulting in the need for legal fees, and correspondence regarding its business license with Visa and regulatory investigations, which prompted loss of business and restructuring of the business.  *Id.* Also, WaveCrest argues that its sole employee, John Racine, should be deposed and Plaintiff can obtain relevant information from him.  *Id.*

While the Court understands the burden, the information that Plaintiff seeks here is at the core of the issues raised in this lawsuit.  As explained above, the request for the audit materials has been pending for over a year at this point, without a clear explanation of why it has taken so long.  Moreover, the documents that WaveCrest explains it has produced does not take the place of the audit that would explain the loss calculations, or the financial statements and gross profit documents.  While deposing John Racine may provide some information, the information sought here—which likely involve complicated financial calculations—are not the type where a deposition would be an equal alternative.  Given the importance of the documents to this litigation, the Court finds that the balance weighs in favor of production.  Accordingly, the Court **GRANTS** the motion to compel as to these requests for production.

### d.  Requests for Production Nos. 9-16, 18

These requests for production seek the following documents:

**No. 9**: Any and all documents and communications concerning Paschini's Gross Profit Growth Target Payout, as defined in section 4.2(a) of the Second Amendment to Employment Agreement dated January 1, 2017.

**No. 10**: Any and all documents and communications concerning Paschini's Gross Profit Overperformance Payout, as defined in section 4.2(b) of the Second Amendment to Employment Agreement dated January 1, 2017.

**No. 11**:  Any and all documents and communications concerning Paschini's Management Based Objectives "MBO" Achievement Payout, as defined in section 4.2( c) of the Second Amendment to Employment Agreement dated January 1, 2017.

The remainder of the requests, Nos. 12-16 and 18, request "Any and all communications between Miles Paschini" and certain individuals "between January 2015-January 2018."

For these requests, WaveCrest has agreed to produce documents, but Plaintiff objects to the privacy and confidentiality objections that WaveCrest is asserting, concerned that documents may be withheld on those bases.  ECF No. 55 at 6.  Plaintiff argues that these objections are untimely and are waived.

WaveCrest replies that its privacy objection targets documents with information related to financial information of other employees and disciplinary action of other employees.  *Id.* at 12.  For example, because Plaintiff's bonus and incentive compensation depends on the efforts of his sales team, many responsive documents may contain third party financial information.  *Id.*  WaveCrest that even if untimely, privacy objections to protect third party privacy should be sustained.  *Id.* at 12-13.  WaveCrest also represents that it has not withheld any documents simply because they contain confidential or proprietary information other than private personal financial information, and has marked any documents containing confidential company information as "confidential" pursuant to the protective order.  *Id.* at 13.

While WaveCrest's concerns about third party privacy is legitimate, this concern may be alleviated by redacting information rather than wholesale withholding of documents.  First, to the extent that documents are responsive to Request Nos. 12-16 and 18, these documents should be produced in their entirety, with appropriate confidentiality markings under the protective order.  Because these requests seek communications between Plaintiff and certain individuals, Plaintiff has already received and been privy to any private information in these responsive documents.  There is no reason to withhold them now as long as they are properly marked.  Under the protective order in place, any sensitive information may be labeled confidential and could be protected from disclosure beyond the purpose of this litigation. *See Mohideen v. Calnet, Inc.*, No. 13CV799 MMA NLS, 2014 WL 1028638, at *3 (S.D. Cal. Mar. 14, 2014).  To the extent documents are responsive to the other requests, Nos. 9-11, any private information may be appropriately redacted.  If the documents contains information private to a third party that is not of use in this litigation (for example, social security numbers or private home addresses), that

information may be redacted before production.  The identity of the third party may also be redacted and replaced with information sufficient to identify the position of the person as relevant to this litigation.  For example, a specific name may be redacted and replaced with information such as "member of Paschini's sales team."[1]  Accordingly, the motion to compel as to these requests is **GRANTED IN PART**, consistent with this order.

### e.  Request for Production No. 17

This request for production seeks the following documents:

**No. 17**:  Any and all communications between Miles Paschini and Russ DeLeon between January 2015 - January 2018.

Plaintiff describes Russ DeLeon as the "beneficial owner" of WaveCrest and objects to WaveCrest's privacy and confidential objections at to this request.  ECF No. 55 at 6.  WaveCrest argues the Russ DeLeon is not an employee of WaveCrest, and that this request is overbroad because it includes no limitation as to time or subject matter.  *Id.* at 13.  WaveCrest also asserts the same third party privacy concerns it did for Request Nos. 9-16 and 18 above.

As a threshold matter, if Russ DeLeon is truly not an employee of WaveCrest and has never been, his emails cannot be said to be in the possession, custody, or control of WaveCrest.  What WaveCrest does not state in the motion is whether Mr. DeLeon ever had an email account associated with WaveCrest, for example, stored on servers controlled and accessible by WaveCrest.  If Mr. DeLeon ever had such an email account, then the Court will order Defendant to produce emails related to this account, subject to the limitations below.  If Mr. DeLeon never had an email account associated with WaveCrest, then the Court sustains WaveCrest's objections and will not require any documents to be produced.

---

[1] This is only an example of how information may be redacted to balance the privacy of the individual and the need for the information for this litigation.  Both parties and counsel for the parties are sophisticated and capable, and the Court expects them to adhere to the spirit of this order in fashioning any appropriate redactions.

As to substance, the Court agrees that this request as worded is too broad as it is without limitation to subject matter or time.  Thus, the request should be limited to the timeframe of Plaintiff's employment with WaveCrest (2015-2017) and be limited to communications that relate to Plaintiff's employment contracts, termination, and compensation, including bonuses and commissions.  As to WaveCrest's privacy objection, documents must still be produced, with appropriate redactions and markings, as the previously discussed for Request Nos. 9-11 above, in Section III.d.  Accordingly, the motion to compel as to these requests is **GRANTED IN PART**, consistent with this order.

### f.  Requests for Production Nos. 32-33

These requests for production seek the following documents:

**No. 32**:  Any and all documents that tracked and/or accounted for Paschini's entitlement to bonuses and commissions at WaveCrest in 2017.

**No. 33**:  Any and all documents that tracked and/or accounted for Paschini's entitlement to bonuses and commissions at WaveCrest in 2016.

As to these requests, Plaintiff argues that WaveCrest may be withholding documents based on privacy and confidentiality concerns.  As to this issue, the Court orders WaveCrest to produce documents, with appropriate redactions and markings, as the previously discussed for Request Nos. 9-11 above, in Section III.d.

Additionally, Plaintiff states that WaveCrest used a "MBO tracker" document kept in excel format to show which objectives had been met at a given time.  ECF No. 55 at 8.  This document would have many iterations over a given year, but Plaintiff states that only one was produced.  *Id.*  If there are other iterations of the MBO tracker document that exist during the relevant time frame, the Court orders WaveCrest to produce them.  Accordingly, the motion to compel as to these requests is **GRANTED IN PART**, consistent with this order.

//

//

19cv33-L (NLS)

IV.    **REQUEST FOR SANCTIONS**

Plaintiff also requests that the Court impose monetary and evidentiary sanctions. ECF No. 55 at 8-9.  Because the Court is compelling WaveCrest to produce and further supplement several interrogatories and requests for production as discussed above, the Court will not impose evidentiary sanctions at this time.  This request for evidentiary sanctions is **DENIED WITHOUT PREJUDICE**.  Plaintiff may raise this issue again should WaveCrest fail to comply with this order.

Plaintiff also request monetary sanctions for the hours spent on meeting and conferring and preparing this motion.  This motion was expressly contemplated by the Court's previous order, which granted the parties the ability to bring another motion on the substance of the discovery requests.  Thus, in its discretion, the also Court declines to impose monetary sanctions at this time as well.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to compel as to the above Interrogatories and Requests for Production are **GRANTED IN PART** and **DENIED IN PART**.  WaveCrest must supplement its discovery responses as outlined above in the order within **30 days of this order**.

**IT IS SO ORDERED.**

Dated:  April 20, 2020

Hon. Nita L. Stormes
United States Magistrate Judge

11

19cv33-L (NLS)